IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

CHRISTY RUFF, INDIVIDUALLY AND
ON BEHALF OF THE WRONGFUL
DEATH BENEFICIARIES OF MCKENZIE
SMITH, DECEASED                                                                                           PLAINTIFF

v.                                                        CIVIL ACTION NO. 1:19-CV-140-SA-DAS

WAFFLE HOUSE, INC., et al                                                                              DEFENDANTS

ORDER AND MEMORANDUM OPINION

On June 27, 2019, Christy Ruff, individually and on behalf of the wrongful death beneficiaries of McKenzie Smith, filed her Complaint [2] against Waffle House, Inc. and Mid South Waffles, Inc. d/b/a Waffle House (collectively "Waffle House") in the Circuit Court of Lee County, Mississippi. Waffle House removed the action to this Court on July 26, 2019. *See* [1]. Now before the Court is Waffle House's Motion for Summary Judgment [37]. Having reviewed the parties' submissions, along with the applicable authorities, the Court is prepared to rule.

*Relevant Factual and Procedural Background*

This lawsuit arises from a shooting which occurred during the early morning hours of June 11, 2017 in the parking lot of the Waffle House restaurant located at 722 South Gloster Street in Tupelo, Mississippi.

On the morning in question, McKenzie Smith (the decedent), Demarcus Trimble, and JacQuette Trimble left the Sax and Jazz nightclub in Tupelo around 2:00 a.m. and went straight to Waffle House. The three traveled in Demarcus Trimble's silver Chrysler 300 vehicle with JacQuette riding in the front passenger seat and McKenzie riding in the back of the car.

Darmarcus Pack, Stefan Baker, and Boggie Smith were at the Waffle House parking lot before the Chrysler 300 arrived. Prior to the Chrysler 300 reaching the premises, Stefan and Boggie engaged in a conversation in the parking lot that had allegedly become increasingly heated. Darmarcus testified

that he told Stefan that he wanted to leave, but Stefan's car was parked in such a way that Darmarcus could not leave until Stefan left. When the Chrysler 300 arrived, it blocked in both Stefan and Darmarcus' vehicles.

Upon arrival, McKenzie Smith (Boggie Smith's brother) immediately exited the vehicle and began walking toward Darmarcus and Stefan. According to Darmarcus, McKenzie had a beer bottle in his hand and kept saying things like "Y'all ain't the only one that got no guns." [37], Ex. B at p. 34. Darmarcus testified that McKenzie walked back toward the Chrysler 300, and one of the Trimbles handed him a gun. As McKenzie walked back toward Darmarcus with the gun in his hand, Darmarcus' brother, Nicholas Pack, shot McKenzie.[1] McKenzie died as a result of the injuries sustained in the shooting. Darmarcus testified that only about five minutes passed from the time the Chrysler 300 arrived until the shooting occurred.

In her Complaint [2], Christy Ruff, individually and on behalf of McKenzie Smith's wrongful death beneficiaries, alleges that Waffle House is liable for general negligence; negligent hiring, training, and supervision; and gross negligence. Particularly, Ruff contends that Waffle House "routinely allowed crowds of individuals who have come from other establishments with an intoxicated state of mind to loiter on its premises at night" and that it "should have been aware of the potential dangers upon its premises[.]" [2] at p. 3. Waffle House now seeks summary judgment in its favor.

*Summary Judgment Standard*

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon

---

[1] Darmarcus testified that he never saw his brother on the night in question. However, he admitted that Nicholas pled guilty to discharging the firearm and is currently incarcerated for charges related to the offense.

2

motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Nabors v. Malone*, 2019 WL 2617240, at *1 (N.D. Miss. June 26, 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

"The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.'" *Id*. (quoting *Celotex*, 477 U.S. at 323). "The nonmoving party must then 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting *Celotex*, 477 U.S. at 324). Importantly, "the inferences to be drawn from the underlying facts contained in the affidavits, depositions, and exhibits of record must be viewed in the light most favorable to the party opposing the motion." *Waste Mgmt. of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 646 (5th Cir. 1997)). However, "[c]onclusory allegations, speculation, unsubstantiated assertions, and legalist arguments are not an adequate substitute for specific facts showing a genuine issue for trial." *Nabors*, 2019 WL 2617240 at *1 (citing *TIG Ins. Co. v. Sedgewick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)) (additional citations omitted).

*Analysis and Discussion*

In its Motion for Summary Judgment [37], Waffle House contends that it cannot be held liable on Ruff's negligence claims because it owed no duty to McKenzie Smith. Additionally, Waffle House contends that, even if it did owe a duty to McKenzie, it did not breach the duty and is still entitled to judgment as a matter of law.

At the outset of its analysis, the Court reiterates its holding in its prior Order and Memorandum Opinion [13], wherein the Court held that the Mississippi Landowners Protection Act, Miss. Code Ann. § 11-1-66.1—which sets forth strict requirements that a plaintiff must establish to prevail on a

third-party assault premises liability case—is inapplicable to this case. The Court found the Act was inapplicable because this lawsuit was filed prior to the Act's enactment, and the Act did not apply retroactively. Thus, the Court will not apply the requirements of the Act in analyzing the claims in the case at bar.

"To recover on a negligence claim, a plaintiff must show that the defendant breached a particular duty owed to the plaintiff, and that the breach of duty proximately caused damages." *Wright v. R.M. Smith Investments, LP*, 210 So.3d 555, 559 (Miss. Ct. App. 2016) (citing *Kroger v. Knox*, 98 So.3d 441, 443 (Miss. 2012)).

"[A] premises owner owes a duty to exercise reasonable care to protect the invitee from reasonably foreseeable injuries at the hands of another." *Evans v. Shucker's Piano & Oyster Bar, Inc.*, 281 So.3d 302, 308 (Miss. Ct. App. 2019) (quoting *Newell v. S. Jitney Jungle Co.*, 830 So.2d 621, 623 (Miss. 2002)). "To establish that an assault was reasonably foreseeable, a plaintiff in a premises liability case must show 1) that the defendant had actual or constructive knowledge of the assailant's violent nature, or 2) actual or constructive knowledge an atmosphere of violence existed on the premises." *Evans*, 281 So.3d at 308 (quoting *Lee v. MGM Resorts Miss. Inc.*, 200 So.3d 1129, 1137 (Miss. Ct. App. 2016)) (additional citations omitted). Explaining the rationale underlying these requirements, the Mississippi Court of Appeals has noted it is "impossible for a business . . . to guarantee the safety of everyone coming onto its premises. . . Therefore, we will not place upon a business a burden approaching strict liability for all injuries occurring on its premises as a result of criminal acts by third parties." *Id*. (quoting *Fenelon v. Jackson Metrocenter Mall Ltd.*, 172 So.3d 760, 764 (Miss. Ct. App. 2013); *Crain v. Cleveland Lodge 1532, Order of Moose Inc.*, 641 So.2d 1186, 1189, 1192 (Miss. 1994)) (internal citations and quotation marks omitted).

First, there has been no contention that Waffle House had actual or constructive knowledge of the assailant's violent nature. Thus, the Court will analyze only the second potential theory for

4

establishing a duty—whether Waffle House had actual or constructive knowledge that an atmosphere of violence existed on the premises.

In order to determine whether an atmosphere of violence existed, the Court looks to recent Mississippi case law. The Court first turns to *Wright*, a 2016 case from the Mississippi Court of Appeals. 210 So.3d 555. There, after purchasing items inside a store in Jackson, Mississippi, Pearlie Wright returned to her vehicle in the parking lot. *Id*. at 556-57. An assailant drove into the parking lot, parked beside Wright, opened her passenger side door, grabbed her purse, and drove away. *Id*. at 557. Wright, who was injured while attempting to catch the assailant and retrieve her purse, filed suit against the property owner "based on premises liability, claiming that an atmosphere of violence existed on the property, and that [the property owner's] failure to employ additional security measures was the proximate cause of her damages." *Id*. Wright supported her claim that an atmosphere of violence existed as follows:

> As evidence, Wright produced affidavits of Gerald Jones (Wright's safety and security expert), as well as incident reports and records of "calls for service" from within a one-mile radius of [the property owner's] property for the five years preceding the incident. The incident reports and calls for service demonstrated that one incident of violent crime occurred on [the subject] property in the five years preceding the incident.

*Id*.

The trial court granted summary judgment in favor of the property owner, holding that "Wright's proof of a single violent crime on the property in the five years preceding the incident was insufficient as a matter of law." *Id*. On appeal, the Court of Appeals agreed:

> Only one confirmed incident of violence occurred on the property in the five years preceding the incident involving Wright. Further, the preceding incident was an armed robbery occurring inside the store, while this incident was a purse snatching occurring in the parking lot. We find that this one prior incident falls short of putting [the property owner] on notice that a parking-lot purse snatching upon an invitee was foreseeable.

5

*Id*. at 559.

This Court also finds instructive the Mississippi Supreme Court's analysis in *Knox*. 98 So.3d 441. There, after purchasing groceries at a Kroger Grocery Store, the assailant approached Knox and demanded her purse. *Id*. at 442. When Knox refused, the assailant lunged at her, knocked her to the ground, and punched her several times. *Id*. The Mississippi Supreme Court analyzed the atmosphere of violence issue as follows:

> In an attempt to establish Kroger's knowledge of an atmosphere of violence in its parking lot, Knox presented evidence of four Kroger incident reports involving three purse-snatchings and one stolen purse, over the course of three years. Knox also presented evidence that one of Kroger's managers was aware of crime throughout the I-55 corridor.
>
> We find as a matter of law that—in the context of Kroger's more than three million customer visits over the course of three years—four incidences of criminal activity are wholly insufficient to establish an atmosphere of violence on Kroger's parking lot. *And imposing liability without notice of an atmosphere of violence would be nothing short of strict liability for injuries caused by the criminal activity of third parties*. It is well settled that a property owner is "not an insurer of an invitee's safety," but owes only "a duty to exercise reasonable care to protect the invitee from reasonably foreseeable injuries at the hands of another."

*Id*. (quoting *Double Quick, Inc. v. Lymas*, 50 So.3d 292, 298 (Miss. 2010); *Simpson v. Boyd*, 880 So.2d 1047, 1051 (Miss. 2004)) (emphasis added).

In *Evans*, the Mississippi Court of Appeals analyzed the existence of an atmosphere of violence at Shucker's, a restaurant and bar located in Jackson, Mississippi. 281 So.3d 302. In that case, Evans left Shucker's when the bar closed and, approximately forty minutes later, got in an altercation with a third party in the parking lot. *Id*. at 305. Arguing that an atmosphere of violence existed at Shucker's, Evans relied on "an unauthenticated document entitled, 'Calls for Service—116 Conestoga Road.'" *Id*. at 308. As explained by the Court of Appeals:

> The document purports to show a total of 473 "calls for service" over a nearly ten-year period (2005 to 2014) to the Ridgeland Police Department related to Shucker's address. However, many of the

6

>categories of calls listed on the document have nothing to do with violence or even criminal activity. The document reflects a total of only eighteen calls in ten years related to possible assaults, including none in 2011. Evans presented no further detail or evidence related to these "calls for service."

*Id*.

The Court of Appeals noted that it is problematic to rely on "mere calls for service" because there is nothing to "verify the accuracy of the calls." *Id*. (quoting *Knox*, 98 So.3d at 444). The Court of Appeals further explained that police incident reports, which the responding officers prepare when they confirm that a crime has occurred, are much more reliable and relevant to this analysis. *Id*. Ultimately, the Court of Appeals held that the documentation Evans provided was insufficient to survive summary judgment and affirmed the trial court's finding on that issue. *Id*.

With this overarching standard in mind, the Court turns to the evidence before it in this case. Waffle House attached to its Motion for Summary Judgment [37] a Report prepared by Bruce A. Jacobs, Ph. D, who has over 25 years of experience as a professional criminologist. Jacobs' Report explains the information he reviewed and further provides:

>The crime data revealed that,
>
>>Not a single homicide occurred at the property in the 3-year reference period.
>>
>>Not a single robbery (armed or strong arm) occurred at the property in that 3-year period.
>>
>>Not a single aggravated assault occurred at the property in that 3-year period.
>>
>>Not a single rape or sexual assault occurred at the property in that 3-year period.
>>
>>Not a single gun assault of any kind occurred at the property in that 3-year period.
>>
>>Not a single person was seriously injured in any act of predatory (stranger-on-stranger) violence during that 3-year period.

7

[37], Ex. A at p. 7.

The Report also notes that "Plaintiff, through discovery material, suggests that the subject incident was foreseeable because the subject property recorded numerous police calls for service in the years preceding the incident date." *Id*. at p. 5. Jacobs explained that "[i]n [his] own experience as a professional criminologist, approximately 70% of calls for service do not generate a validated police report" and then provided multiple reasons for that contention. *Id*. at p. 6. Ultimately, Jacobs reached the conclusion that "not a single act of predatory violence reportedly occurred at the Waffle House in the three (3) years preceding the incident. The subject shooting was not linked to any atmosphere of violence at Waffle House, nor did Waffle House impel the shooter's conduct in any way." *Id*. at p. 12. Relying heavily on Jacobs' Report, Waffle House contends that it had no actual or constructive knowledge that violent activity was likely to occur on its premises.

The Court now looks to Ruff's Response [41]. In opposition, she asserts that:

> In addition to those desiring a late night or early morning meal, the subject premises have established itself for years as the go to location for those who are leaving the local bars and/or night club establishments on the weekends. Those who arrive afterhours will see a highly congested and overcrowded parking lot which is full of people loitering on the premises in a highly intoxicated and impaired state of mind.

[41] at p. 1.

Setting aside the fact that these allegations do not provide the type of evidence which courts consider in determining whether an atmosphere of violence exists (as analyzed above), Ruff provides no proof to support these contentions. She does not attach an expert Report, nor does she attach police reports regarding crime at the subject property. She does not even provide proof of the "calls for service" referenced in Jacobs' Report. In fact, she does not attach a single piece of evidence whatsoever to her Response [41]. Instead, she provides the Court with mere attorney argument to support her position. For example, in addition to the statements made above, she also argues that "[i]t

8

is noticeable that the Defendants speak of felony type crimes not being committed on its premises during the prior three years. It is also noticeable that the Defendants fail to speak of the misdemeanor crimes committed on its premises and the numerous calls to 911 on its premises." [41] at p. 2. While counsel makes these arguments implying that there may have been other criminal activity on the premises, no proof whatsoever is provided to support those contentions. In essence, the Court has before it less proof than the plaintiffs provided in the *Wright*, *Knox*, and *Evans* cases explained above—all of which were cases where an atmosphere of violence was found not to exist as a matter of law.[2]

Thus, Jacobs' Report, which specifically analyzed the crime data in the area and concluded that an atmosphere of violence did not exist, along with other sworn proof Waffle House provided, is the only appropriate summary judgment evidence that has been presented. This Court has time and time again explained that "once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with 'significant probative' evidence. . . *To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda*." *Jones v. Region VI Health-Mental Retardation Comm'n*, 2006 WL 924005, at *2 (N.D. Miss. Apr. 7, 2006) (citations omitted) (emphasis added); *see also Weekly v. Tallahatchie Cnty., Miss.*, 2021 WL 4434224, at *2 (N.D. Miss. Sept. 27, 2021) (quoting *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)) ("Once a summary judgment motion is made and properly supported, the nonmovant must go beyond pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's burden."); *Irvin v. Prentiss Cnty., Miss.*, 2020 WL 5571040, at *2 (N.D. Miss. Sept. 17,

---

[2] The Court also notes that Ruff's Response [41] does not cite a single case, with the exception of one case regarding the general summary judgment standard.

2020) (citation omitted) ("If the defendants' motion is supported by evidence, the plaintiff cannot discharge his burden by alleging mere legal conclusions; instead, he must present affirmative evidence in order to defeat a properly supported motion for summary judgment.").

Considering the evidence before it, the Court finds, as a matter of law, that no atmosphere of violence existed. Waffle House is therefore entitled to summary judgment.

In addition, the Court notes that "even if an 'atmosphere of violence' exists, that simply means that the business owner has a duty to provide reasonable security for its customers." *Evans*, 281 So.3d at 308 (citations omitted). Stated differently, assuming Ruff had come forward with sufficient evidence to show an atmosphere of violence existed, she still must show that Waffle House did not provide reasonable security for its customers. Jacobs addressed this issue at length in his Report, specifically explaining that Waffle House took the following security measures:

- Systematic lighting inside and outside the facility
- Routine lighting maintenance and repair
- No loitering signage
- 8 surveillance cameras inside and outside the store (with signage)
- Interior public view monitor
- CPTED compliant building boasting excellent natural surveillance
- Fully staffed restaurant (6 employees at the time of the incident)
- Security policies and procedures to enhance customer safety
- Training policies to report suspicious persons
- Training policies on conflict de-escalation where appropriate
- Training policies on when to alert management and/or first responders
- Nightly shift huddles to share and convey relevant information among staff
- Robbery training
- Cash management procedures for robbery prevention and mitigation
- Routine management inspection of property
- Periodic police presence encouraged through food and drink discounts
- Periodic crime risk assessment of stores through RiskTrack scoring system
- Internal incident reporting system to inform real-time security assessment of select stores
- Externally driven reporting system to inform policy and procedure changes of select stores
- Periodic target-hardening measures of stores where appropriate

[37], Ex. A at p. 8.

Jacobs concluded that these measures are consistent with the generally accepted standards across the country.

As with her argument associated with the existence of an atmosphere of violence, Ruff makes only conclusory arguments in opposition, such as "[a]t best, said so called security does nothing more than provide evidence of what occurred but does nothing to prevent disturbances on its premises." [41] at p. 2. She also states that "Waffle House's security cameras provide evidence that employees did nothing to prevent loitering nor secure the premises." *Id*. Despite making this conclusory assertion, however, she did not provide the Court with a copy of the footage to which she references. Ruff's contentions on this point again fall below the well-settled procedure for opposing a properly supported motion for summary judgment.[3]

Even if an atmosphere of violence did exist, Ruff has not come forward with evidence to create a genuine issue of material fact that Waffle House failed to provide reasonable security to its customers. *See Evans*, 281 So.3d at 308.

Ultimately, as noted above, "the Mississippi Supreme Court . . . has 'refused to place upon a business a burden approaching strict liability for all injuries occurring on its premises as a result of criminal acts by third parties.'" *Fenelon*, 172 So.3d 763-64 (quoting *Crain*, 641 So.2d at 1191). Ruff's attempt to survive summary judgment without providing any proof is essentially a request to impose strict liability. The Court declines to do so. Summary judgment is appropriate.[4]

---

[3] The Mississippi Supreme Court has held that "a plaintiff may not prove that a premises owner's failure to provide security measures proximately caused injuries based on cursory and unsupported statements of causation by an expert witness." *Bennett v. Highland Park Apartments LLC*, 170 So.3d 450, 454 (Miss. 2015) (citing *Lymas*, 50 So.3d 292 (Miss. 2010)). Thus, even if made by an expert (which they were not), the types of conclusory statements Ruff urged would be insufficient to preclude summary judgment on this issue.

[4] In its Motion [37], Waffle House argued that Smith was a trespasser—not an invitee—and therefore was owed a lesser duty. However, having found that Ruff cannot survive summary judgment as to the standard applicable to an invitee, the Court sees no need to address that issue.

*Conclusion*

For the reasons set forth above, the Court finds that no genuine issue of material fact remains and that Waffle House is entitled to judgment as a matter of law. Therefore, the Motion for Summary Judgment [37] is GRANTED. All claims asserted against Waffle House are dismissed *with prejudice*. A Judgment consistent with this Order and Memorandum Opinion will be entered this day.

SO ORDERED, this the 17th day of November, 2021.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE